Robert D. JONES, Jr. & Anne C. JONES, Individually
and as Shareholders of TWIN OAKS FISH FARM, INC.
*v.* Joseph YORK, Janice YORK, Elsa Caroline YORK
and TWIN OAKS FISH FARM, INC.

74-64                                                510 S.W. 2d 574

Opinion delivered June 24, 1974

*Hugh L. Brown* and *Walter Skelton,* for appellants.

*Lightle, Tedder & Hannah,* for cross appellants.

LYLE BROWN, Justice. The appellants, Robert D. Jones,
Jr. and wife were plaintiffs below. The defendants below —
appellees and cross-appellants here — are Joseph York and
wife, and Elsa Caroline York. The litigation stems from the
unsuccessful operation of a fish farm by all the parties.

Robert Jones and Joe York, close friends residing in Lit-
tle Rock, conceived the idea in 1968 of going into the fish far-
ming business. W. D. York and Elsa Caroline York, husband
and wife, owned jointly and resided on a farm in White
County. They were the parents of Joe York. (W. D. York died
before the filing of this suit.) Robert Jones and Joe York per-
suaded the elder Yorks to join in business with the agreement
that the 140 acre farm of the elder Yorks would be used as the

fish farm. Thus the three men and their wives entered into a joint venture in late 1968 with the understanding that a corporation would later be formed and each family would own a one-third interest therein.

The parties borrowed $30,000 from the Commercial National Bank in Little Rock with which to begin operations. They all made themselves jointly and severally liable for the debt. The only collateral, in addition to personal endorsements, was the farm which the elder Yorks mortgaged to the bank. It was agreed the Joseph E. Yorks and the Joneses would each pay to the elder Yorks the sum of $11,666 representing an agreed one-third value of the farm. Thereafter, the interests of all would be conveyed to the corporation to be formed. Whether the debts to the elder Yorks were to be paid before the land was deeded to the corporation is disputed.

The corporation, Twin Oaks Fish Farm, Inc., was formed on July 1, 1969. Shortly thereafter, the Robert Joneses and the Joseph E. Yorks moved to the farm site, living in house trailers. After a period of months, differences arose between the parties, largely over the insistence by the Joneses that the land should be deeded to the parties for final conveyance into the corporation. The Joneses left the farm and returned to Little Rock in the summer of 1970. At that time the Joneses had paid $450 on the debt to W. D. and Elsa York. Joseph and Janice York had paid nothing. The Joneses allege they left under an agreement that they, the Joneses, would leave and relinquish all interest in the farm and the corporation except a loan made by Robert Jones to the corporation in the sum of $9,379.45, and the Yorks and the corporation would relinquish all rights against them.

Such agreement as heretofore described is disputed by the Yorks. Elsa York alleged the Joneses still owe her $11,166 on the Robert Jones' original debt for a one-third interest in the farm. She never conveyed any interest to the Joneses, and admitted at the trial that she could not convey it, having already conveyed the farm to her son, Joe. Elsa York's claim was denied by the chancellor and she cross-appeals from that part of the judgment.

Robert Jones loaned the corporation $9,379.45 early in its operation. When the farm was sold, all corporate debts were paid out of the proceeds of the sale except the debt to Robert Jones. At the trial it developed that Elsa York was holding a balance of $10,000 from the sale of the farm. The trial court gave the Joneses judgment against the corporation for the debt owing them but denied the Joneses a lien on the proceeds held by Elsa York. The Joneses appeal from that part of the judgment.

The Joneses also sued Joseph E. and Janice Sue York for $860.37 representing the total of some personal loans made to the Yorks. On this item the chancellor held with the Joneses. The Yorks filed a motion to amend by pleading the statute of limitations but the motion was denied. The Yorks appeal from the denial of the motion.

The points advanced in this court by appellants, the Joneses, are:

I. The chancellor erred in holding that there was no delivery of the deed to the real property in issue to the Twin Oaks Fish Farm Corporation; and in holding that Elsa Caroline York does not hold the funds from the sale of said realty as a constructive trustee for the payment of the corporate debt owed to Robert D. and Anne C. Jones.

II. The chancellor erred in not granting the plaintiffs (appellants) six per cent interest on the $9,379.45 debt which was awarded plaintiffs against the corporation.

The appellee and cross-appellant, Joe York, contends the chancellor erred in not permitting the Yorks to amend their answer by pleading the statute of limitations with reference to the Joneses' claim for $860.37.

The appellee and cross-appellant, Elsa Caroline York, contends the chancellor erred in refusing to award her judgment against Robert Jones in the principal sum of $11,166 for a one-third interest in the lands. Mrs. York concedes that her cross-appeal is "a conditional one". She says that if this court agrees with the chancellor and "sustains the decree, then she

would not be entitled to recover on cross-appeal for the reason that the original agreement to convey to the corporation had not been consummated, and this in itself would have relieved appellant Jones of the necessity to pay".

The major issue to be resolved by this appeal is whether the chancellor was correct in holding there was no delivery of a deed covering the real estate to Twin Oaks Fish Farm Corporation. We shall now consider the evidence relating to the execution of the deed.

In early 1969 Joe York and Robert Jones engaged attorney Will Mitchell to form a corporation. By July 3, 1969, the papers had been prepared and were forwarded to York. In addition Mr. Mitchell prepared two deeds affecting the farm. "[T]he plan was for the William D. Yorks to convey to Joe York a one-third undivided interest in that tract and to Jones a one-third undivided interest . . . ., and then it was planned that the three sets of owners would convey title to the corporation. * * * To my knowledge these deeds were never executed. I do know that sometime later on the plan was changed. There were delays and I was never told why the deeds were never executed at the time."

Mr. Mitchell explained further that upon the execution of the recited deeds, the Joneses and the Joe Yorks were each to deliver a promissory note to W. D. York for their one-third of the purchase price. Mr. Mitchell said that was not done, in fact his files did not reflect that the notes were ever prepared.

Mr. Mitchell testified that in June or July of 1970 a difference arose between the Joe Yorks and the Joneses. Thereupon, the Joneses withdrew from the business. A new proposal was made by Robert Jones to Joe York and Mr. Mitchell prepared the papers. It consisted of a release of all claims that either party had against the other; the debt of the corporation to Robert Jones in the amount of $9,379.45 was acknowledged; the farm was to be conveyed to Twin Oaks Fish Farm; Jones was to get a second mortgage to secure his promissory note; and the Joneses were to surrender their stock in the corporation. All the papers were sent to Joe York but Mr. Mitchell did not know whether they were ever ex-

ecuted. The witness said he had no knowledge as to whether the new plan was ever put into effect.

Witness Mitchell also testified that he prepared a deed conveying the farm to the corporation and it was executed. It was delivered to Joe York.

Joe York testified that the new plan of operation, including the deed to the farm, was contingent on refinancing. Mr. Mitchell said he had no knowledge of the contingency but he said he did know that Joe York was trying to refinance the operation. Joe York testified he went to numerous lending institutions with the plan but was rejected. The main reason, he said, was that the financiers objected to financing an operation in which half the stock would be owned by an elderly couple (the W. D. Yorks). As a result of his inability to get refinancing, Joe York said he destroyed the papers relating to the new proposal and had his parents deed him the property. Before he could make progress on refinancing with him as the sole owner the note to Commercial National Bank became long past due. In addition several thousand dollars in accounts which were owed by the corporation became due. The Yorks had personally guaranteed the accounts. Consequently, the farm was sold to an individual. There were sufficient funds raised by the sale to pay the recited debts. There was a balance of over $10,000 and Joe York explained that he gave the funds to his mother because he considered her the actual owner of the farm.

Attorney Mitchell's testimony lent some support to Joe York's position about the contingency of refinancing. He said that "refinancing was in the picture on the part of the Joe Yorks". Also, Robert Jones' testimony gave some credence to Joe York's position. Jones said he was aware that York thought the new arrangement would make possible the badly needed refinancing. The loan was not obtained, no deeds or mortgages were recorded, and no minutes were placed in the corporation minute book. The trial court specifically found there was no delivery of the deed to the real property to Elsa York. The note and second mortgage to Jones were never signed and delivered.

The chancellor concluded that the deed from the Yorks

to the corporation was contingent upon refinancing and that the deed was never delivered. We have not tried to mention all the evidence but we have considered carefully the entire abstract. Credibility was an important factor. The issue was close but we are unable to say that the conclusion of the chancellor is clearly against the preponderance of the evidence.

On the other point raised by the appellants, the Joneses, we think the chancellor should have granted judgment for six per cent interest on the $9,379.45 debt. The promissory note for the debt reflected interest and in fact the corporation actually made an interest payment.

On the cross issue of whether Joe York should have been permitted to amend to plead the statute of limitation on the personal debt of $860.37, we are unable to say the chancellor abused his discretion. The motion to amend was not made until long after the trial had started and a considerable portion of the evidence had been taken.

Since we are sustaining the chancellor on the issue of whether there was delivery of the deed from the Yorks to the corporation, we find no merit in cross-appellant Elsa Caroline York's contention that she should have judgment against Robert Jones for $11,166.

Affirmed as modified.