John HINCHEY, Joyce HINCHEY, Darrell OLIGER,
Clarence STRIPLING, Eva STRIPLING, Charles
MARSH, Marilyn MARSH and N.A. CAUGHORN *v.*
Patsy THOMASSON, et al., Individually, and as Directors
of the Arkansas State Highway & Transportation
Department

86-229                                          727 S.W.2d 836[1]

Supreme Court of Arkansas
Opinion delivered April 20, 1987
[Rehearing denied May 18, 1987.[2]]

---

[1] Justice Hickman's dissenting opinion appears at 730 S.W.2d 473.
[2] Purtle, J., would grant rehearing.

*Stripling & Morgan*, by: *Dan Stripling*, for appellant.

*Chris O. Parker* and *Thomas B. Keys*, for appellee.

JACK HOLT, JR., Chief Justice. At issue in this case is the authority of the Arkansas State Highway & Transportation Department Commissioners (Commissioners) to exchange roads with Van Buren and Searcy Counties. The chancellor found such action was "within the scope of its [the Commissioners] statutory and constitutional authority." We agree and affirm.

Arkansas State Highway 254 runs through Van Buren and Searcy Counties. It extends from Highway 16 northwesterly across Archey Creek for about six miles. There is a 1.2 mile gap in the highway system. Highway 254 then extends easterly about ten miles to Highway 65 at Dennard, Arkansas.

The Commissioners entered a minute order stating that the section of Highway 254 that crosses Archey Creek would be eliminated from the state highway system and instead would become part of the county road system by transfer. The order then provided that approximately twelve miles of county road were to be added to the remainder of Highway 254 and become a state highway. The added road would connect Highway 27 near the Pope County line with the remainder of Highway 254, so that Highway 254 would extend from Highway 65 to Highway 27.

The Van Buren and Searcy County Judges entered orders in which they agreed to the transfers.

Appellants own land on the section of Highway 254 that was turned over to Van Buren and Searcy Counties. They brought this suit claiming the Commissioners violated Ark. Stat. Ann. § 76-501 (Repl. 1981) when they authorized the road exchange with the counties.

Section 76-501 provides:

> State Highways are hereby declared to be those primary roads and secondary roads and connecting roads heretofore designated by the Highway Commission, as shown by a map on file in the office of the State Highway Commission, entitled "Map of the State of Arkansas Showing State Highway System," and marked "Revised March 1, 1929," including those portions of said roads extending into or through incorporated towns and cities. The State Highway Commission is hereby required to preserve said map as a permanent record.

> The State Highway Commission is hereby empowered, with any necessary consent of the proper Federal Authorities, to make, from time to time such necessary changes and additions to the roads designated as State Highways as it may deem proper, and such changes or additions shall become effective immediately upon the filing of a new map, as a permanent and official record in the office of the State Highway Commission. *Provided, however, the State Highway Commission shall not have authority to eliminate any part of the Highway System.*

> It is hereby declared to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State comprising the State Highways as defined herein and hereinafter. [Acts 1929, No. 65, § 3, p. 264; Pope's Dig., § 6523; Acts 1941, No. 6, § 1, p. 17.] (emphasis added).

The landowners correctly contend that the proposed exchange of roads with the counties would cause the elimination of part of the state highway system, which is prohibited by § 76-501.

■ Nevertheless, the landowners' argument must fail because of subsequent legislation enacted by the General Assembly. Act 150 of 1961 is entitled, "An Act Relating to the Improvement of Federal-Aid Secondary Highways; *to Authorize the State Highway Commission and the County Judges of the Respective Counties to Enter Into Agreements Providing for the Exchange of Highways in Their Respective Highway Systems*; and for Other Purposes." (emphasis added). Sections four and five of that Act provide:

> SECTION 4. The State Highway Commission and the County Judges of the respective counties are hereby authorized to enter into agreements whereof certain highways in the State Highway System become a part of the County Highway System, and certain highways in the County Highway System become a part of the State Highway System. All such transfer agreements shall be recorded in the minutes of the Commission and spread upon the appropriate county court record.

> SECTION 5. The provisions hereof are supplemental to existing laws relating to the subject matter of this Act.

The Commissioners through their minute order, and the county judges through their orders complied with the requirements of section four. The landowners point out that the county judges apparently did not enter their orders until after this lawsuit was filed. Section four, though, merely requires that the order be "spread upon the appropriate county court record." No time limit is placed on compliance with this provision.

■ The plain language of section four unambiguously authorizes the exact action taken by the Commissioners and the counties. This court has no authority to construe a statute that is plain and unambiguous to mean anything other than what it says. *Weston* v. *State*, 258 Ark. 707, 528 S.W.2d 412 (1975); *Johnson* v. *Lowman*, 193 Ark. 8, 97 S.W.2d 86 (1936). When a statute is clear and unambiguous, we do not resort to any exploration for the legislative intent because the intention of the legislature must be gathered from the plain meaning of the language used in the statute. *Cook* v. *Bevill*, 246 Ark. 805, 440 S.W.2d 570 (1969), (Fogleman, J., dissenting).

The landowners argue that Act 150, which has never been codified, was legislation only for the biennial period beginning January 1, 1961 and ending December 31, 1962, and that section four, therefore, was not general legislation and does not supersede § 76-501. Sections one through three of Act 150 do pertain to the biennial period only, as those sections relate to the improvement of federal-aid and secondary highways. The applicable time frame is specifically stated in those sections. Section four, on the other hand, concerns a different subject matter and no time frame is mentioned. As stated previously, inasmuch as the plain meaning of section four can be ascertained from the language used, this court may not speculate as to the legislative intent in passing this act. The fact that the act has never been codified is not proof that it is special legislation only. Statutory codes are private codes and the absence of an act in the statutes does not indicate that act is invalid. *See* Sutherland Statutory Construction, § 28.04 (4th ed. 1985).

Section five of Act 150 states that its provisions are "supplemental" to existing law. Because of the conflict, however, between § 76-501 and section four, a repeal by implication of this portion of the statute occurred with the passage of the act. We have explained that repeals by implication are not favored in the law and to produce this result "the two acts must be upon the same subject and there must be a plain repugnancy between their provisions." *Milord & Blanks, Trustees* v. *Arkmo Lumber & Supply Co.*, 272 Ark. 462, 615 S.W.2d 349 (1981), *quoting, Forby* v. *Fulk, Judge*, 214 Ark. 175, 214 S.W.2d 920 (1948). The act passed most recently operates in this situation as a repeal of the first, but only to the extent of the conflicting provisions. *Id.*; *Berry* v. *Gordon*, 237 Ark. 547, 376 S.W.2d 279 (1964).

Section 76-501 provides that the Commissioners may not eliminate any part of the highway system; Act 150 authorizes the Commissioners to exchange lands with the county highway system, which would in effect eliminate those parts being transferred from the state highway system. The two laws are plainly repugnant. The remainder of § 76-501 is unaffected by Act 150, however, and accordingly remains in force.

The chancellor's order upholding the action of the Commissioners is affirmed.

HICKMAN, PURTLE, and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. In my judgment the majority goes to great lengths to uphold the action of the Arkansas State Highway Commission. I must respectfully dissent, because I would not declare an act valid that presumably has expired. Nor would I go so far as to hold that one provision of an obscure act was intended by implication to overrule a law that has been on the books since 1929. The majority concedes the Highway Department acted after the lawsuit was filed, that the obscure section was never codified (not published in the official edition of Arkansas Statutes Annotated) and that we do not favor repeal by implication. Casting off all these good reasons to reach one result, it reaches the other untenable position.

The Highway Department decided to abandon a short stretch of road linking two other state highways. A faint argument can be made that a part of the highway system was not "eliminated as whole" according to *Woollard* v. *Arkansas State Highway Comm.*, 220 Ark. 731, 249 S.W.2d 564 (1952); but that argument simply will not stand the light of day because this section of the system, running north and south, was the whole — not a part of a highway. The majority has seized the belated reason offered by the Highway Department to justify the abandonment of this road. An obscure section of an act passed in 1961 was resurrected to justify the action. The act was clearly not intended to live beyond December 31, 1962, its expressed lifetime. Would any legislator have thought section 4 was intended to expressly overrule a law that had been on the books since 1929? If so, the legislators were deceived. It should be noted that no mention was made the sections were severable. Those responsible for publishing permanent laws did not read the act as covering separate subjects. Would any layman reading this act think section 4 would stand alone? The act speaks for itself and I set it forth in its entirety:

> AN ACT Relating to the Improvement of Federal-Aid Secondary Highways; to Authorize the State Highway Commission and the County Judges of the Respective Counties to Enter Into Agreements Providing for the Exchange of Highways in Their Respective Highway Systems; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. As soon as may be done consonant with good business practices, the State Highway Commission shall, during the biennial period beginning January 1, 1961 and ending December 31, 1962, award contracts, and issue work orders thereon, for the improvement of federal-aid secondary highways in the State Highway System, the surfaces of which have not been paved with concrete or asphalt, of an amount not less than $7,500,000, whereof not less than $100,000 shall be for work in each county of this State. The records of the State Highway Department shall at all times reflect, with respect to each such contract: the project number and name; the date of the award; the amount thereof, and if in more than one county, the amount in each county; the date of the issuance of the work order to the contractor; and the amount paid or approved for payment on each such project, by counties. Provided, that in the event any such improvement project is undertaken by State forces, then the total amount thereof, by counties, shall be included in the records of the Department, and shall be considered a part of the improvements required to be made hereunder.

SECTION 2. If, not later than December 31, 1962, contract awards and/or work done by State forces as provided by Section 1 hereof shall amount to less than $100,000 in each county, then such amount shall forthwith be expended by the State Highway Department, either by contract or by State forces, on federal-aid secondary highways in the County Highway System of such county; and in respect thereof, the State Highway Commission shall consider the recommendations of the County Judge as to the particular improvement project, or projects, to be undertaken as in this section required.

SECTION 3. The State Highway Commission shall furnish the Governor and the County Judge of each county with progress reports in relation to the foregoing requirements, with each such report to be furnished not later than the 20th day next following: December 31, 1961, June 30,

1962, December 31, 1962 and June 30, 1963.

SECTION 4. The State Highway Commission and the County Judges of the respective counties are hereby authorized to enter into agreements whereof certain highways in the State Highway System become a part of the County Highway System, and certain highways in the County Highway System become a part of the State Highway System. All such transfer agreements shall be recorded in the minutes of the Commission and spread upon the appropriate county court record.

SECTION 5. The provisions hereof are supplemental to existing laws relating to the subject matter of this Act.

APPROVED: March 1, 1961.

Recently, we refused to hold a provision in the tax code could alter the Freedom of Information Act, though they were in direct conflict. *Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986); see also *Legislative Joint Auditing Committee* v. *Woosley*, 291 Ark. 89, 122 S.W.2d 581 (1987). Are highways less important to people? Are public roads and their maintenance not one of the main functions of state government? Can the rights of a few citizens be brushed aside?

If the Highway Department wants the authority to do what it did, the legislature is there to grant or deny that permission. The Highway Department has to follow the law just like everyone else, and is entitled to no more consideration than the least powerful citizen. If anything, a state agency's welfare comes after the welfare of the people.

Since the Highway Department did not follow the law, the road ought to remain in the state system until changed lawfully.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent from the majority opinion because I do not believe the Highway Commission has the authority to eliminate a portion of the state highway system. The majority opinion concedes that this "exchange of roads" is prohibited by Ark. Stat. Ann. § 76-501 (Repl. 1981). The opinion bases its decision on the rather tenuous premise that the relevant portion of § 76-501 was repealed by implication by Act 150 of 1961. Even if this proposition is

accepted as valid, however, I do not believe the "exchange" was accomplished in accordance with the law.

The commissioners entered minute order No. 84-413 and No. 84-414 on September 25, 1984. These orders added and deleted certain sections of State Highway 254, Van Buren County Road 68 and Searcy County Road 6. The state thereby incorporated 7.2 miles of road into its system and eliminated 6.1 miles. Although the state retained that portion of the road which transverses Farkleberry Creek, it eliminated the Archey Creek section from the state highway system. The terrain in the Archey Creek section is steep, and the road is narrow, rocky, and crooked. It was, and is, the expense of improving and maintaining this section which makes this road undesirable and motivated the state to abandon it.

Neither minute order No. 84-413 or No. 84-414 mentioned the exchange of roads between the counties and the state. In fact there were only two conditions contained in each order: these requirements were that each county furnish rights of way, clear of utility easements, to the added sections, and that the new sections be hard surfaced to meet the federal standards.

Other than the terrain features already mentioned, the effect of the change orders was to drop a 6.1 mile section of highway, which runs generally north and south, and add a 7.2 mile section, which runs east and west. Formerly, Highway 254's western (actually the southern end of the deleted section) terminus was at Highway 16, almost due south of where Highway 254 entered Searcy County. Now, the western terminus is at Highway 27, some 12 miles west of the former terminus.

Minute order No. 85-592 amended the two previously mentioned orders and provided for the immediate acceptance of the new section into the state highway system. The order stated that the new section of Highway 254, in the Chimes community, was causing the traveling public difficulty because of deteriorating road conditions and inclement weather. This amendment ordered the inclusion of this section without the fulfillment of the previously imposed conditions.

The appellants filed suit against the Commission on January 23, 1986. On February 12, 1986, the Searcy County Judge

entered an order reciting the Commission's minute order No. 85-592 and stating that the highways were "exchanged." A like order was entered by the Van Buren County Judge on February 18, 1986. This order also cited minute order No. 85-592 as authority for the "exchange." It is quite obvious that the county orders were entered in an effort to "shore up" the Commission's position. There is no need to shut the barn door after the horse is out.

I agree with the majority that Ark. Stat. Ann. § 76-501 clearly states that the Commission does not have the authority to eliminate any part of the state highway system. However, I disagree with the majority on the meaning of Act 150 of 1961. There was good reason not to codify Act 150 because it was clearly not intended to be a permanent statute. Section 1 of the Act provides that "during the biennial period beginning January 1, 1961 and ending December 12, 1962, the Commission shall. . . ." Section 3 provides that the Commission shall furnish annual reports each six months until June 30, 1963. All of the Act except Section 4 unquestionably applies solely to the period of time between January 1, 1961, and June 30, 1963.

Even if Section 4 is applicable beyond that period, we must still read it together with other law on the same subject. The last sentence of Section 4 of Act 150 states: "All such transfer agreements shall be recorded in the minutes of the Commission and spread upon the appropriate county record." Until after the present suit was filed, there was absolutely no mention of the transfer of the abandoned section of State Highway 254 to the counties. Certainly there was no transfer agreement even alluded to in the minute orders of September 25, 1984.

The majority correctly quotes the law of statutory construction. The basic rule is to read a statute according to its plain and unambiguous words. *Weston* v. *State*, 250 Ark. 707, 528 S.W.2d 472 (1975). We do not construe a statute when the language is clear and plain. *Johnson* v. *Lowman*, 193 Ark. 8, 97 S.W.2d 86 (1936). In keeping with these rules of construction, it is clear that the Highway Commission cannot abandon any part of the state highway system. Under the language of Act 150 the Commission may, however, exchange part of the state highway system by agreement with the respective counties. In the present case there

was no such agreement and consequently there could be no such exchange. Even if Act 150 is construed as general legislation, the law does not provide for the abandonment of any part of the state highway system.